UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE NAPLES CONTINENTAL CLUB
INCORPORATED, AND/OR ALL
UNIT HOLDERS, ATIMA,

      Plaintiff,

v.                                    Case No:  2:25-cv-00910-JES-NPM

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, and HARTFORD
FIRE INSURANCE COMPANY,

      Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of Defendants' Motion to Dismiss (Doc. #20) filed on February 4, 2026.  Plaintiff filed its Response in Opposition (Doc. #28) on March 26, 2026. Defendants filed their Reply (Doc. #35) on May 1, 2026.  For the reasons set forth below, Defendants' motion is granted.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation

omitted). As the Eleventh Circuit has recently summarized:

> When reviewing a motion to dismiss, we accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. When making the determination of whether a complaint states a plausible claim, we draw on our judicial experience and common sense.
> . . .
> We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny. At the outset, we determine what must be pled for each cause of action. . . . Then, we consider the well-pleaded factual allegations . . . to determine whether they plausibly suggest an entitlement to relief.

Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp., 147

F.4th 1341, 1346–47 (11th Cir. 2025)(citations and internal

punctuation omitted).

In deciding a motion to dismiss, district courts generally

must limit their consideration to the pleadings and any exhibits

attached to the pleadings. Grossman v. Nationsbank, N.A., 225

F.3d 1228, 1231 (11th Cir. 2000). When a complaint references

extrinsic evidence, a court may consider such exhibits under the

incorporation-by-reference doctrine provided the exhibit is

"central to the plaintiff's claim" and "its authenticity is unchallenged." Baker v. City of Madison, 67 F.4th 1268, 1276-77 (11th Cir. 2023)(quotations omitted). Similarly, "when resolving a motion to dismiss . . ., a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024).

## II.

The Naples Continental Club Incorporated ("Naples Continental") has property in Naples, Florida. (Doc. #1, ¶ 2.) The property was insured by Policy No. 99017115532019 (the "Policy"), a Standard Flood Insurance Policy ("SFIP") issued by Hartford Insurance Company of the Midwest ("Hartford Insurance Company"). (Id. ¶ 6.) Hartford Insurance Company is a Write-Your-Own ("WYO") insurance carrier and issued the Policy pursuant to the National Flood Insurance Program (the "Program"). (Doc. #20, p. 1.) The Federal Emergency Management Agency ("FEMA") administers the Program pursuant to the National Flood Insurance Act (the "Act").[1]

---

[1] Congress enacted the Act in 1968 to provide affordable flood insurance in areas where it is uneconomical for the private market to do so. Fla.

-3-

Under the Policy, Hartford Insurance Company agreed to pay for losses caused by flood damage and Naples Continental agreed to strictly comply with SFIP requirements, including those governing the time to file suit.  (Doc. #20-3.)

On September 28, 2022, the property was damaged by Hurricane Ian.  (Doc. #1, ¶ 8.)  The Complaint does not provide details of the loss but alleges that damages "were thoroughly documented by experts" and timely submitted to Hartford Insurance Company.  (Id. ¶¶ 9-10.)

On October 27, 2023, Hartford Insurance Company sent Naples Continental a letter (the "October 2023 Letter").  It stated that they "received [Naples Continental's] signed sworn proof of loss in the amount of $33,639.78 building."  (Doc. #20-4, p. 2.) Hartford Insurance Company, however, rejected the proof of loss entirely, because "[t]he original claim for building was closed for payments . . . based on the adjuster's original claim estimate which exceedds [sic] your submitted proof of loss total amount."

---

Key Deer v. Paulison, 522 F.3d 1133, 1136 (11th Cir. 2008).  The Act authorizes FEMA to establish and administer the Program.  Id.  FEMA uses WYO companies like Hartford Insurance Company to assist in the issuance and administration of SFIPs.  Newton v. Cap. Assur. Co., 245 F.3d 1306, 1308 (11th Cir. 2001).  As "fiscal agents" of the United States, WYO companies must strictly adhere to SFIP requirements and adjust claims in accordance with the Program guidelines.  Id. at 1311-12.  Also, "the insured must adhere strictly to the requirements of the [SFIP] before any monetary claim can be awarded against the government."  Sanz v. U.S. Sec. Inc., Co., 328 F.3d 1314, 1318 (11th Cir. 2003).

(Id.)  Additionally, Hartford Insurance Company explained that to consider a supplemental claim, they "must receive supporting documentation in the form of paid receipts, invoices or signed contractors['] cost of repair to review for additional flood damages toward the 9/28/2022 flood claim, or items identified as omitted or missed directly damaged by flood."  (Id.)

Appended to the October 2023 Letter was a form entitled "Policyholder Rights" which notified Naples Continental of their options following Hartford Insurance Company's denial of their claim.  (Id. at p. 4.)  Those options were to administratively appeal the decision or to "file suit . . . within one year of when your insurer first denied all or part of your claim."  (Id.) Naples Continental, however, took no further action until it brought the instant action.

## III.

On October 9, 2025, Naples Continental filed a one count breach of insurance contract claim against Hartford Insurance Company and Hartford Fire Insurance Company.  (Doc. #1, pp. 5-6.) Defendants move to dismiss the breach of contract claim under Rule 12(b)(6) because Naples Continental's lawsuit was not filed within one year of the October 2023 Letter and is therefore barred by the statute of limitations.  (Doc. #20, p. 2.)  Naples Continental asserts the October 2023 Letter does not comply with FEMA Bulletin

W-17013a that outlines required provisions in a denial letter and therefore does not constitute a denial letter triggering the statute of limitations.  (Doc. #28.)

### A.    The October 2023 Letter is a Denial Letter

Naples Continental argues that the October 2023 Letter cannot be a denial letter because it "fails to meet certain of the criteria established in the FEMA Bulletin."  (Doc. #28, p. 4.) Specifically, it did not: (1) deny any specific items; (2) state any specific dollar amounts as "denied"; (3) state whether any items were not "covered"; (4) cite any portion of the policy that shows items claimed were not covered; and (5) does not include the word "deny."  (Id.)  Defendants did not refer to the FEMA Bulletin in their motion but ultimately assert that the October 2023 Letter is a denial letter.  The Court agrees with the Defendants.

On October 16, 2017, FEMA's Assistant Administrator for Federal Insurance issued FEMA Memorandum W-17013a.[2]  Under that Memorandum, denial letters **"must include** the following elements[:]"

- **The date of the denial letter.** The date of the initial denial letter begins the one-year period from which the policyholder may file suit; the denial letter date also triggers the 60-day period

---

[2] FEMA, Memorandum W-17013a, Denial Letter Requirements (Oct. 16, 2017), https://agents.floodsmart.gov/sites/default/files/bulletins/W-17013a/w -17013a.pdf [hereinafter FEMA Memo].

to file an appeal with FEMA under Title 44, Code of Federal Regulations, Section 62.20.

- **The name(s) of the policyholder(s), the mailing address, and the loss location.** While straightforward, these elements are especially important when policyholders involve legal representatives, public adjusters, or other representatives when submitting a claim for payment (i.e., the proof of loss).

- **The date of loss.** Necessary when policyholders file claims for the same properties across multiple events.

- **The date(s) the policyholder submitted a request for payment (e.g., advance payment, proof of loss) or failed to comply with a material term of the SFIP (e.g., failed to submit a timely proof of loss).** Sequentially, a denial letter should be issued only after the policyholder submits a signed and sworn proof of loss, signs the final adjuster's report, or fails to comply with a material term of the SFIP.

- **The item(s) denied with the corresponding dollar amount denied, whenever applicable.** Denial letters should avoid general terms such as "various items" or "finished items in a basement," and instead list the items not covered by the SFIP.

- **A plain-language explanation for the non-payment or non-coverage.** Rather than quote the SFIP at length, the denial letter should explain why the SFIP does not provide coverage. . . .

- **Citations to the relevant sections of the SFIP and a web link to the SFIP.** This should complement the plain-language explanation, not replace it.

-7-

FEMA Memo at pp. 1-2 (emphasis in original).  The letter should also include an attachment explaining policyholder rights after a whole or partial denial.  Id.

Here, the October 2023 Letter includes all the necessary elements to be considered a denial letter.  The date of the denial letter was October 27, 2023.  (Doc. #20-4, p. 2.)  The name of the policy holder, the mailing address, the loss location, the date of loss, and the date Naples Continental submitted its proof of loss were listed in the letter.  (Id.)  Further, the letter also provided an attachment explaining policyholder rights after the insurer denies a claim.[3]  (Id. at p. 4.)

Although Naples Continental is correct that "items" are not listed in the letter, the FEMA Memorandum only requires such a listing "whenever applicable."  FEMA Memo at pp. 1-2.  The letter still provides the dollar amount — $47,872.52 — that was denied and stated that such amount reflected the "sworn proof of loss entirely."  (Doc. #20-4, p. 2.)  As such, there was no need for the letter to list out all items, since the letter specifically denied payment for *all* items.

---

[3] Although Naples Continental argues that the form was also included in a "simple payment letter" to Plaintiff, it makes no difference in whether the October letter is a denial letter.  (Doc. #28, p. 4.)

Further, the letter provides a plain-language explanation for the non-payment. It explicitly states: "[t]he original claim for building was closed for payment in the amount of $19,234.44 towards building on the above flood event based on the adjuster's original claim estimate which exceedds [sic] your submitted proof of loss total amount." (Id.) The letter continues to explain that Hartford Insurance Company must receive "supporting documentation in the form of paid receipts, invoices or signed contractors['] cost of repair to review for additional flood damages toward the 9/28/2022 flood claim, or items identified as omitted or missed directly damaged by flood." (Id.) Therefore, the letter explains that the supplemental payment was rejected because there was insufficient evidence to establish any new covered damages not previously paid.

Finally, the letter cites sections of the Insurance Policy and provides a web link to the Insurance Policy. (Id. at pp. 2-3.) The sections define what is considered a "direct physical loss" as well as what a "valued policy" is. (Id. at p. 2.) The letter also includes what specific documents the insureds can provide to prove loss and the options Hartford Insurance Company has after a loss. (Id. at pp. 2-3.) These provisions complement the plain-language explanation provided by Hartford Insurance Company since without evidence of additional covered damages not

previously paid, no supplemental payment is required.  As such, the October 2023 Letter is a denial letter.[4]

### B.    The Statute of Limitations Bars This Action

The applicable statute of limitations provides:

> In the event the program is carried out as provided in section 4071 of this title, the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072.  A similar one-year limitation provision appears in Section VII.O of the Insurance Policy: "If you do sue, you must start the suit within one year of the date of the written denial of all or part of the claim[.]"  (Doc. #20-3, p. 23.)

---

[4] Since the limitation period begins when all or part of the claim is denied, the Court will not look to the October 13, 2024 letter. See 42 U.S.C. § 4072; Hawk v. Hartford Ins. Co. of the Midwest, No. 2:24-cv-823-JES-NPM, 2025 WL 326668, at * 7 (Steele, J.)(M.D. Fla. Jan. 29, 2025)(citing Lionheart Holding GRP v. Phila Contribution Ship Ins. Co., 368 F. App'x 282, 285 (3d Cir. 2010)(rejecting claimant's argument that a subsequent letter altered, varied, or waived the limitations period))(stating that subsequent rejections or supplemental requests do not change the date of the first disallowance).

Since the October 2023 Letter is a denial letter, the statute of limitations began to run on October 27, 2023.  The lawsuit was filed on October 9, 2025, almost twenty-four months after the denial letter.  Therefore, the lawsuit is barred by the statute of limitations.  The case is thus dismissed without prejudice.

Accordingly, it is now

**ORDERED:**

(1)   Defendants' Motion to Dismiss (Doc. #20) is **GRANTED.**

(2)   The Complaint is **DISMISSED WITH PREJUDICE** based on the applicable statute of limitations.

(3)   The Clerk shall enter judgment accordingly, terminate all pending deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of May 2026.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

-11-